IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

TERRI ROBERSON                                                    PLAINTIFF

v.                          Civil No.11-2020

MICHAEL J. ASTRUE, Commissioner
Social Security Administration                                    DEFENDANT

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff, Terri Roberson, brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying her claims for a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act (hereinafter "the Act"), 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision.  *See* 42 U.S.C. § 405(g).

I.    **Procedural Background:**

The plaintiff filed her applications for DIB and SSI on March 8, 2007, alleging an onset date of September 15, 2006, due to degenerative disk disease ("DDD"), neuropathy, fatigue, bipolar disorder, post-traumatic stress disorder ("PTSD"), and depression.  Tr. 125, 133, 138, 211-212, 220-224, 232-234, 237.   Plaintiff's applications were denied initially and on reconsideration.  She then requested an administrative hearing, which was held on September 16, 2008.  Tr. 13-63.  Plaintiff was present and represented by counsel.

At the time of the administrative hearing, plaintiff was 35 years of age and possessed a high school education.  Tr. 125.  She had past relevant work ("PRW") experience as a hotel

inspector, blood unit screener, social service aide, and laundry worker.  Tr. 32, 39-40, 193, 195-202, 239-240, 243-244.

On December 29, 2008, the Administrative Law Judge ("ALJ") concluded that, although severe, plaintiff's degenerative disk disorder ("DDD") and depression did not meet or equal any Appendix 1 listing.  Tr. 73-75.  She found that plaintiff maintained the residual functional capacity ("RFC") to perform a range of light work not requiring only occasional climbing, balancing, kneeling, crawling, stooping, and crouching; moderate exposure to heights and workplace hazards; and, does not require the operation of an automobile.  Due to her mental impairment, the ALJ also concluded Plaintiff was limited to unskilled work.  Tr. 75-79.  With the assistance of a vocational expert, she then determined Plaintiff could still perform her PRW as a blood unit screener.  Tr. 56-57.

Plaintiff appealed this decision to the Appeals Council, but said request for review was denied on April 15, 2010.  Tr. 1-3.  Subsequently, plaintiff filed this action.  ECF No. 1.  This case is before the undersigned for report and recommendation.  Both parties have filed appeal briefs, and the case is now ready for decision.  ECF No. 10, 11.

## II.   **Applicable Law:**

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole.  *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007).  Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's decision.  *Id*.  "Our review extends beyond examining the record to find substantial evidence in support of the ALJ's decision; we also consider evidence in the record that fairly detracts from that decision."  *Id.*  As long as there is substantial

2

evidence in the record to support the Commissioner's decision, the court may not reverse the decision simply because substantial evidence exists in the record to support a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). If we find it possible "to draw two inconsistent positions from the evidence, and one of those positions represents the Secretary's findings, we must affirm the decision of the Secretary." *Cox*, 495 F.3d at 617 (internal quotation and alteration omitted).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir.2001); *see also* 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

A.    **The Evaluation Process**:

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his or her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national

economy given his or her age, education, and experience.  *See* 20 C.F.R. § § 404.1520(a)-(f)(2003).  Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity.  *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

## III.   Discussion:

Of particular concern to the undersigned is the ALJ's determination that Plaintiff's bipolar disorder and post traumatic stress disorder ("PTSD") did not constitute severe impairments.  A "severe impairment is defined as one which 'significantly limits [the claimant's] physical or mental ability to do basic work activities.'"  *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006) (quoting 20 C.F.R. § 404.1520(c)).  If the impairment would have no more than a minimal effect on the claimant's ability to work, then it does not satisfy the requirement of step two.  *Page v. Astrue,* 484 F.3d 1040, 1043 (8th Cir.2007).

The impairment must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques.   A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [the claimant's] statement of symptoms (see [20 C.F.R.] § 404.1527).  20 C.F.R. § 404.1508.

In the present case, Plaintiff was diagnosed with depression, bipolar II disorder, and PTSD.  Records indicate that Plaintiff had been prescribed Paxil, Effexor, and Cymbalta.  Tr. 345, 346, 493.  On multiple occasions, her mood and affect were noted to be flat and labile.

On July 11, 2007, Plaintiff underwent a psychological evaluation with Dr. Patricia Walz. Tr. 384-388.  She reported a history of depression, fear, and anxiety, as well as flashbacks of past

4

abuse (molestation as a child, raped as an early adult, and physical abuse by her ex-boyfriend). Plaintiff described worsening depression due to her inability to work, and occasional panic attacks.  She also mentioned experiencing mood swings, but stated that her "up" moods were brief in comparison to her low moods.  She had taken Wellbutrin successfully in the past, but stopped taking it due to its cost.  The other medications she had been prescribed had not been as helpful.   At this time, her attitude was pleasant but gloomy; her mood was glum; her affect was flat and consistent with her mood; and, her thought processes were logical and goal directed. Tr. 384-388.

Dr. Walz diagnosed Plaintiff with bipolar II disorder, PTSD, and rule out borderline intellectual functioning ("BIF").  Tr. 384-388.  She then assessed her with a global assessment of functioning score of 50-55.  Dr. Walz recommended that intelligence and achievement testing be performed as she felt Plaintiff's problems with concentration were likely related to her mood disorder and intellectual limitations, rather than attention deficit hyperactivity disorder.  She also indicated that further evaluation of her money management skills would be necessary to determine whether she could manage her own funds without assistance.  Tr. 384-388.

On September 9, 2008, Dr. George Tompkins examined Plaintiff and completed an assessment of her work-related abilities.  Tr. 490-504.  Of interest, he also diagnosed her with bipolar disorder, depression, and PTSD.  Tr. 490-504.

Dr. Walz completed a second psychological assessment of Plaintiff on September 24, 2008.  Tr. 505-515.  Again, Plaintiff reported symptoms of panic and stated that she avoided social situations.   She reported spending compulsively when in a good mood and eating compulsively when her mood was bad.  At this time, her mood was sad and depressed with a flat

AO72A
(Rev. 8/82)

affect.  Plaintiff reported continued problems with concentration, focus, and memory.  IQ testing revealed a full scale IQ of 88.  Additional testing also revealed a verbal learning disorder, which was found to be compatible with her history of special education and problems with reading comprehension.  Dr. Walz diagnosed her with bipolar II disorder, history of alcohol abuse in remission, PTSD secondary to childhood trauma and adult rape, and dependent traits.  She again assessed her with a GAF of 45-50.  Dr. Walz indicated that Plaintiff would have difficulty with tasks involving reading and writing, and exhibited impaired attention and concentration.  Overall, she felt Plaintiff's condition had deteriorated since her last exam.

Dr. Walz also completed an RFC assessment, concluding that Plaintiff was extremely limited in the following areas: completing a normal work week or work day without interruptions from psychologically based or pain related symptoms, performing without an unreasonable number and length of rest periods, and demonstrating reliability.  Marked limitations were noted in the areas of dealing with work stress, remembering and carrying out detailed or complex instructions, maintaining attention for extended periods of time, maintaining regular attendance, working in coordination or proximity to others without being distracted by them, performing at a consistent pace, avoiding undue constriction of interests, behaving in an emotionally stable manner, dealing with the general public, accepting instructions and responding appropriately to criticism from supervisors, and getting along with coworkers or peers without distracting them or exhibiting behavioral extremes.  Further, her ability to follow work rules; relate to coworkers; interact with supervisors; understand, remember, and carry out short and simple instructions; perform activities within a schedule; be punctual within customary tolerances; make simple work-related decisions; respond appropriately to changes in work setting; respond appropriately

6

to changes in work procedures; travel in unfamiliar places or use public transportation; set realistic goals; make plans independently of others; respond and adjust to the use of new and unfamiliar tools and/or machines; ask simple questions and request assistance; and, maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness were found to be moderately limited.

In spite of this evidence, the ALJ found Plaintiff's bipolar II disorder and PTSD to be non-severe impairments. No explanation was provided for this determination.

A review of the entire record reveals that Plaintiff's bipolar and PTSD symptoms persisted, even after treatment via medication. Dr. Walz evaluated Plaintiff on two occasions and assessed her with a GAF of 45-55. A GAF of 41-50 is indicative of serious symptoms or a serious impairment in social, occupational, or school functioning, while a GAF of 51-60 suggests moderate symptoms or difficulties. *See* DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS IV-TR 34 (4th ed. 2000). She also found Plaintiff to be extremely and markedly limited in several areas. The ALJ discredited Dr. Walz's conclusions citing the duties of Plaintiff's most recent work as a housekeeping inspector in 2006. However, this work was last performed at least one year prior to Dr. Walz's first assessment and two years prior to her

7

second evaluation.[1]  Further, Dr. Walz noted that Plaintiff's condition had deteriorated between her first and second evaluations.   Accordingly, the undersigned believes remand is necessary to allow the ALJ to reconsider the severity of Plaintiff's bipolar II disorder and PTSD.

The undersigned is also troubled by the ALJ's RFC determination in this matter.  RFC is the most a person can do despite that person's limitations.  20 C.F.R. § 404.1545(a)(1).  A disability claimant has the burden of establishing his or her RFC.  *See Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir. 2004).  "The ALJ determines a claimant's RFC based on all relevant evidence in the record, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." *Davidson v. Astrue*, 578 F.3d 838, 844 (8th Cir. 2009); *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005).  Limitations resulting from symptoms such as pain are also factored into the assessment.  20 C.F.R. § 404.1545(a)(3).  The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001).  Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that

---

[1]The ALJ is also reminded that the evaluation of a mental impairment is often more complicated than the evaluation of a claimed physical impairment.  *Andler v. Chater,* 100 F.3d 1389, 1393 (8th Cir. 1996).  Evidence of symptom-free periods, which may negate the finding of a physical disability, do not compel a finding that disability based on a mental disorder has ceased.  *Id.*  Mental illness can be extremely difficult to predict, and remissions are often of "uncertain duration and marked by the impending possibility of relapse." *Id.*  Individuals suffering from mental disorders often have their lives structured to minimize stress and help control their symptoms, indicating that they may actually be more impaired than their symptoms indicate. *Hutsell v. Massanari,* 259 F.3d 707, 711 (8th Cir.2001); 20 C.F.R. Pt. 404, Subpt. P., App. 1, § 12.00(E) (1999).  This limited tolerance for stress is particularly relevant because a claimant's residual functional capacity is based on their ability to perform the requisite physical acts day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real world." *McCoy v. Schweiker,* 683 F.2d 1138, 1147 (8th Cir. 1982) (abrogated on other grounds).

AO72A
(Rev. 8/82)

addresses the claimant's ability to function in the workplace." *Lewis v. Barnhart,* 353 F.3d 642, 646 (8th Cir. 2003).

As previously noted, Dr. Tompkins examined Plaintiff in September 2008, and was of the opinion that she could occasionally lift up to ten pounds, but never more; occasionally reach, climb stairs and ramps; rarely push/pull, work above shoulder level, bend, and crouch; and, never work in extended position, work overhead, squat, crawl, stoop, kneel, balance, twist, climb ladders or scaffolds, work near hazardous conditions or unprotected heights, or handle vibrating tools. She was also found to have moderate limitations with regard to exposure to temperature extremes, respiratory irritants, and driving or riding in automotive equipment. Tr. 409-504. However, the ALJ dismissed Dr. Tompkins' opinion in favor of the assessment of a non-examining consultant, stating that Dr. Tompkins evaluated Plaintiff on only one occasion. The undersigned notes that the non-examining doctor did not evaluate Plaintiff at all. Accordingly, given that the record does contain repeated complaints of lower back pain and radiculopathy, coupled with objective laboratory tests to support these impairments and moderate to severe pain evidenced by prescriptions for and injections of strong narcotic pain medications (Lorcet Plus, Percocet, Dilaudid, and Demerol), we believe remand is necessary in order to allow the ALJ to re-evaluate Plaintiff's RFC.

**IV.**   **Conclusion:**

Based on the foregoing, we recommend reversing the decision of the ALJ and remanding this case to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g). **The parties have fourteen days from receipt of our report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file**

9

timely objections may result in waiver of the right to appeal questions of fact.  The parties

are reminded that objections must be both timely and specific to trigger de novo review by

the district court.

          DATED this 17th day of October 2011.

                                      /s/ *J. Marschewski*
                                      HON. JAMES R. MARSCHEWSKI
                                      CHIEF UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)